| |
|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK |
| SALVATORE J. MARCHIANO,<br><br>      Plaintiff,<br><br>  v.<br><br>BETTY ELLEN BERLAMINO, in her professional and individual capacities,<br><br>      Defendant. |
| BETTY ELLEN BERLAMINO, in her professional and individual capacities,<br><br>      Third-Party Plaintiff,<br><br>  v.<br><br>KAREN SCOTT<br><br>      Third-Party Defendant. |
| KAREN SCOTT<br><br>      Fourth-Party Plaintiff,<br><br>  v.<br><br>WPIX, INC.,<br><br>      Fourth-Party Defendant. |

10 Civ. 7819 (LBS)

**MEMORANDUM & ORDER**

SAND, J.

  Before the Court is Fourth-Party Defendant WPIX, Inc.'s ("WPIX") motion to dismiss Fourth-Party Plaintiff Karen Scott's ("Scott") ADEA (29 U.S.C. § 623(d)), NYHRL (New York Exec. Law § 296(7)), and NYCHRL (New York City Admin. Code § 8-107(7)) retaliation

1

claims. Scott claims that WPIX caused its employee and her former supervisor Betty Ellen Berlamino ("Berlamino") to sue Scott for contribution on the age discrimination claim made by Sal Marchiano ("Marchiano") against Berlamino. WPIX argues that Scott's retaliation claim is not cognizable because (1) retaliation must be employment-related and (2) Scott has not pled enough facts to show a plausible causal connection between Scott's age discrimination suit and Berlamino's suits for contribution. Because Supreme Court precedent only requires that retaliation be a "materially adverse action" and because Scott pleads sufficient facts to show a plausible materially adverse action and from which to infer causation, we deny WPIX's motion to dismiss.

## I. Background

Scott worked at WPIX from 1993 until 2009, serving as news director for the last thirteen of those years. *See Scott v. WPIX, Inc.*, No. 10 Civ. 4622, 2011 WL 6425017, at *1 (S.D.N.Y. Dec. 21, 2011). In 2009, following WPIX's filing for bankruptcy protection, Berlamino terminated Scott, replacing her with a man eight years younger. *See id.* On June 14, 2010, Scott filed suit in this District claiming that her firing violated federal, state, and municipal age discrimination law. Decl. Kenneth J. Rubinstein ("Scott Decl.") Ex. A. Her suit is before our colleague, the Honorable William H. Pauley III.

In her discrimination complaint before Judge Pauley, Scott asserted that WPIX terminated two of Scott's former subordinates, sports anchor Marchiano and features reporter Larry Hoff ("Hoff"), after Berlamino made age-related comments about them. Scott Decl. Ex. A. ¶ 40. On October 13, 2010, Marchiano sued Berlamino for age discrimination. His suit is this case's underlying claim. On March 8, 2011, Hoff sued Berlamino, WPIX, and its parent company in a separate age discrimination suit that is also before this Court.

2

In both *Hoff* and in this action, Berlamino filed third-party complaints—on May 9, 2011, in the *Hoff* action and on May 20, 2011, in this action—in which she asserted claims for contribution from Scott. Scott then filed motions to dismiss both third-party complaints. We found that each of Berlamino's contribution claims pled sufficient facts to survive Scott's motion to dismiss. *See Marchiano v. Berlamino*, No. 10 Civ. 7819, 2011 WL 4829931 (S.D.N.Y. Oct. 11, 2011); *Hoff v. WPIX, Inc.*, No. 11 Civ. 1591, 2011 WL 4809763 (S.D.N.Y. Oct. 11, 2011).

At the same time both parties were briefing Scott's motion to dismiss, Scott began seeking to add a retaliation claim to her age discrimination claim before Judge Pauley. *See* Scott Decl. Ex. E. Following our denials of Scott's motions to dismiss, Scott answered Berlamino's claims for contribution and claimed indemnification from WPIX in both actions. Months later, Scott amended her pleadings in both actions to claim that Berlamino's instigation of the contribution claims at WPIX's direction was retaliation.

Scott alleges that Berlamino sued Scott "at the direction and control of WPIX." Scott's Second Am. Fourth-Party Compl. ¶ 7. Circumstantial evidence of WPIX's control of the suit is that "WPIX took the exact same action" in *Hoff*, that in both cases "Berlamino and WPIX are represented by the same counsel, and that, upon information and belief, WPIX has assumed the cost of Berlamino's defense." *Id.* Scott further alleges that "WPIX had never before taken a similar action against a current or former employee." *Id.* ¶ 10. Additionally, in her amended complaint, Scott restates her earlier counterclaim for indemnification from WPIX for all damages. *Id.* ¶ 12–13, 19–21.

In response, WPIX filed the motion that is the subject of this Order, arguing (1) that the contribution action is not retaliation because it does not "impact" Scott's "employment or prospective employment," Mem. Law Supp. WPIX, Inc.'s Mot. Dismiss 4 (quoting *Fei v.*

3

*WestLB AG*, No. 07 Civ. 8785, 2008 WL 594768, at *3 (S.D.N.Y. Mar. 5, 2008)), and (2) that "Scott has failed to allege any facts that would establish a causal connection between the filing of her lawsuit and Berlamino's claim against her for contribution," *id.* at 5. For the reasons below, we disagree and deny WPIX's motion to dismiss.

## II. Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999). To survive dismissal under Fed. R. Civ. P. 12(b)(6), "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 697 (quoting *Twombly*, 550 U.S. at 570).

The same standards apply to a motion to dismiss a fourth-party complaint. *See, e.g., Katz v. Image Innovations Holdings, Inc.*, No. 06 Civ. 3707, 2008 WL 4840880, at *1 (S.D.N.Y. Nov. 5, 2008); *Travelers Cas. & Sur. Co. v. Dormitory Auth.–State of N.Y.*, No. 07 Civ. 6915, 2008 WL 1882714, at *2 (S.D.N.Y. Apr. 25, 2008).

## III. Discussion

### A. We Use Federal Title VII Law To Analyze All of Scott's Claims

To begin, we note that although Scott has claimed retaliation under the federal ADEA, state law, and municipal law, we consider all of Scott's claims and the facts pled in her

4

complaint to determine whether she has pled all four elements of a plausible federal Title VII prima facie retaliation claim.[1] Title VII retaliation law is interchangeable with ADEA retaliation law. Even though ADEA and Title VII discrimination claims may sometimes be analyzed differently, *see Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (holding that, because of textual differences, ADEA does not authorize a mixed-motives discrimination claim while Title VII does), ADEA and Title VII retaliation claims have the same standards because "the retaliation provisions of Title VII and the ADEA are nearly identical." *Dembin v. LVI Servs., Inc.*, 822 F. Supp. 2d 436, 438 (S.D.N.Y. 2011); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Retaliation claims under Title VII and the ADEA are . . . analyzed under [the same framework.]").

We rely on federal Title VII precedent in our analysis below to evaluate the plausibility of the asserted state and municipal claims because the state and municipal retaliation laws are functionally the same or similar to Title VII. Regarding state law, "[c]ourts apply the same standard used in Title VII cases in analyzing NYHRL retaliation claims." *Caban v. Richline Grp., Inc.*, No. 10 Civ. 559, 2012 WL 2861377, at *14 (S.D.N.Y. July 10, 2012) (citing *Patane v. Clark*, 508 F.3d 106, 115-117 (2d Cir. 2007)). Regarding municipal law, any Title VII retaliation claim that survives a motion to dismiss would also survive a motion to dismiss as a New York City Admin. Code § 8-107(7) claim because "New York State courts and district courts in this Circuit have concluded . . . that the retaliation inquiry under the CHRL is 'broader'

---

[1] The Second Circuit recently noted that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit" because *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), held that employment discrimination claimants did not need to show a prima facie case in their pleadings while *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) appeared to heighten pleading standards generally. *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012). Because we hold that Scott's complaint plausibly shows a prima facie case, it meets the least forgiving construction of *Twombly* and *Iqbal* and we do not have to consider whether more lenient pleading standards apply. *Cf. id.* (bypassing clarifying the pleading standard because "Hedges's claims fail any conceivable standard of pleading").

5

than its federal counterpart." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010).

The four-part federal test for a prima facie negligence claim is sometimes stated as: "(1) [employee] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a *materially adverse action*; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (emphasis added). In other Second Circuit cases, courts describe a different standard for the third part: "[employee's] employer thereafter subjected [employee] to a *materially adverse employment action*." *Richards-Byers v. N.Y.C. Dep't of Fin.*, 449 F. App'x 55, 56–57 (2d Cir. 2011) (emphasis added) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)); *see also Gorzynski*, 596 F.3d at 110 (requiring "an adverse employment action" for a prima facie ADEA retaliation claim).

WPIX argues that Scott's complaint must be dismissed because Scott's complaint pleads insufficient facts to raise a plausible claim as to the disputed third part—the adverse action—and fourth part—causation—and state a prima facie claim. For the reasons discussed below, we find Supreme Court precedent dictates we evaluate Scott's claim against the "materially adverse action" standard and we find Scott has pled sufficient facts both to claim WPIX took materially adverse action against her and to establish a plausible inference of causation. Therefore, Scott has pled a plausible retaliation claim.

B. A Reasonable Contribution Claim Is the Type of Harm Recognized as Retaliation Under the ADEA

In its motion to dismiss, WPIX argues that Scott's claim fails because it is not an "adverse employment action." We hold that the adverse action does not have to be an

6

employment action and that being sued for contribution is materially adverse. Additionally, because no party raised the unsettled issue as to whether there are constitutional limitations preventing us from ultimately holding WPIX liable for instituting a well-founded lawsuit and because Scott's claim would be plausible if we held for her on that issue, we forbear ruling on that issue until it has been further developed.

1. *The Correct Standard for the Third Part of the Prima Facie Retaliation Case Is "Materially Adverse Action"*

WPIX asserts that the correct test for a prima facie retaliation claim is that Scott must have suffered "an adverse 'employment action'" Mem. Law Supp. WPIX, Inc.'s Mot. Dismiss 4 (quoting *Ginsberg v. Valhalla Anesthesia Assocs., P.C.*, 971 F. Supp. 144, 148 (S.D.N.Y. 1997)). WPIX argues that because Scott failed to "allege that the purported retaliatory conduct had 'some impact on [her] employment or prospective employment," *id.* at 4 (quoting *Fei v. WestLB AG*, No. 07 Civ. 8785, 2008 WL 594768, at *3 (S.D.N.Y. Mar. 5, 2008)), her claim must be dismissed.

Scott may not have pled that her job prospects were harmed by this suit, but that is irrelevant because we find the correct test is whether the employer took any "materially adverse action." The Supreme Court case *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), is directly on point and requires us to use the "materially adverse action" test, which does not require that the materially adverse action relate to former, current, or future employment.

In *Burlington Northern*, the Supreme Court resolved a circuit split as to "whether Title VII's antiretaliation provision forbids only those employer actions and resulting harms that are related to employment or the workplace." *Burlington N.*, 548 U.S. at 61. Contrasting the text of

7

Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a), with its antidiscrimination provision, 42 U.S.C. § 2000e-2(a), and considering the purpose of the antiretaliation provision, the *Burlington Northern* Court held that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N.*, 548 U.S. at 67; *see also id.* at 57 ("[T]he antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.").

Despite the Supreme Court's explanation that the harm in the alleged retaliation need not be "employment-related," many courts in this circuit continue to use the pre–*Burlington Northern* phrase "materially adverse employment action" when describing a prima facie retaliation case. *See, e.g.*, *Richards-Byers*, 449 F. App'x at 56–57 (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d at 552). However, that phrase sits uneasily at best with the holding of *Burlington Northern*. Instead, it is clear that *Burlington Northern* only requires "materially adverse action," as *Lore*, 670 F.3d at 157, and other cases held. Because we do not find the retaliatory action needs to be employment-related, we next consider whether WPIX's allegedly directing Berlamino to file suit is a materially adverse action.

*2. A Suit Against an Employee Is a "Materially Adverse Action"*

In addition to resolving the circuit split regarding whether the action had to be employment related, the *Burlington Northern* Court resolved another circuit split regarding materiality and establishing that the employer's adverse action had to be material to constitute retaliation. The *Burlington Northern* Court concluded that a materially adverse action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted). Therefore, we must consider whether, as a matter of law, the

facts pleaded by Scott—her employer caused her to be sued for contribution—could be an action that might well have dissuaded a reasonable worker from charging an employer with discrimination.

Perhaps sensing that it was not likely to win on its "materially adverse employment action," WPIX argues in its reply brief that *Burlington Northern* requires an employee to suffer "an injury or harm," Reply Mem. Law. Further Supp. Mot. Dismiss 1 (emphasis deleted) (quoting *Burlington N.*, 548 U.S. at 67), and that Scott failed to plead "any harm whatsoever, much less with respect to any prospective employment she may seek to secure or may have sought, if any," *id.* at 2. WPIX's assertion that being sued for contribution is not an injury or harm is unconvincing. As the Supreme Court explained in a labor retaliation case:

> A lawsuit no doubt may be used by an employer as a powerful instrument of coercion or retaliation. . . . . [B]y suing an employee who files charges with the [NLRB] or engages in other protected activities, an employer can place its employees on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit. Regardless of how unmeritorious the employer's suit is, the employee will most likely have to retain counsel and incur substantial legal expenses to defend against it.

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 740–41 (1983). Suing an employee is an act that might well dissuade a reasonable worker from filing discrimination charges. However, even as *Bill Johnson's* makes clear that a lawsuit may dissuade a reasonable worker from filing charges against his or her employer, *Bill Johnson's* also raises an issue, unmentioned by either party, that there may be a constitutional limitation on allowing retaliation claims against well-founded counterclaims.

3. *We Decline To Decide in this Motion To Dismiss Whether WPIX's Right To Petition Prevents Us from Recognizing a Retaliation Action Based on Berlamino's Contribution Counterclaim*

9

While *Bill Johnson's* forecloses the argument that being made a defendant is not harmless, it raises the issue as to whether there are constitutional limitations that prevent us from recognizing a retaliation cause of action when the alleged retaliation is a "well-founded" lawsuit. Because neither party raised this issue and because the law is unsettled, we forbear deciding it pending further development by the parties.

*Bill Johnson's* held that retaliatory lawsuits could be enjoined only if they are "baseless." *Compare Bill Johnson's*, 461 U.S. at 743 ("The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act."), *with id.* at 744 ("[W]e hold that it is an enjoinable unfair labor practice to prosecute a baseless lawsuit with the intent of retaliating against an employee for the exercise of rights protected by § 7 of the NLRA."). Well-founded lawsuits are protected from injunction because "the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Id.* at 741.

The case before us fits into neither category carved out by *Bill Johnson's*. Because we held that Berlamino's third-party complaint survived a motion to dismiss, *Marchiano*, 2011 WL 4829931, we strongly implied that the suit allegedly instigated by WPIX was not baseless. But even though WPIX's suit was not found to be baseless, *Bill Johnson's* may not prohibit Scott's retaliation action because Scott does not seek an injunction. Scott's action in damages is less injurious to First Amendment rights than a request for an injunction because an injunction would be a heavily disfavored prior restraint. *See Bill Johnson's*, 461 U.S. at 753 (Brennan, J., concurring) (comparing an injunction to a prior restraint and arguing that NLRB could take other actions against an allegedly retaliatory suit that had a reasonable basis).

10

Whether or not an employee can claim retaliation because he or she has been sued in a well-founded lawsuit is an open question. Generally, "[c]ourts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions, even though they do not arise strictly in an employment context." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008). By contrast, "[t]he more difficult question [is] whether a counterclaim or lawsuit that is not baseless, but is motivated by a retaliatory animus, can be found to be actionable retaliation . . . ." Robert B. Fitzpatrick, *Counterclaims and Retaliation*, A.L.I.-A.B.A. Continuing Legal Educ., July 28–30, 2011, at 1603, 1607, *available at* ST001 ALI-ABA 1603.

Courts in this district have reached differing results. Several cases relied on the pre–*Burlington Northern* standard of "materially adverse employment action" to find that counterclaims could be retaliatory only if they affected complainant's employment. *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–24 (2d Cir. 2001) (finding reversible error when a district court granted summary judgment on an ADA retaliation claim when an employer "threaten[ed employee] with legal action when she demanded accommodation"); *Fei*, 2008 WL 594768, at *3 ("[F]or a counterclaim to be actionable as retaliatory, it must have some impact on the plaintiff's employment or prospective employment."); *Kreinik v. Showbran Photo, Inc.*, No. 02 Civ. 1172, 2003 WL 22339268, at *6–7 (S.D.N.Y. Oct. 14, 2003) ("In these circumstances, the ancillary consequences of litigation, such as the potential need for customers to testify, could have a detrimental effect on Kreinik's future business relationships."); *Yankelevitz v. Cornell Univ.*, No. 95 Civ. 4593, 1996 WL 447749, at *4–5 (S.D.N.Y. Aug. 7, 1996) ("[T]he Court is unwilling to adopt a rule stating that compulsory counterclaims, or any other legal cause of action, cannot, as a matter of law, constitute retaliation

11

. . . . Whether, under any set of facts, a counterclaim can be an adverse employment action is a more difficult question to answer.").

More recent cases in this district have sometimes said that employers' right to petition requires their suits to be baseless for an employee's retaliation action to arise. *Compare Mohamed v. Sanofi-Aventis Pharm.*, No. 06 Civ. 1504, 2009 WL 4975260, at *24 (S.D.N.Y. Dec. 22, 2009) (not making a distinction between baseless and well-founded counterclaims when writing that "it would seem that the reasoning of *Burlington Northern* applies in the Title VII context and counterclaims . . . could amount to a materially adverse action even if the counterclaims have no impact on the plaintiff's employment or prospective employment.") (dicta), *with Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 343 (S.D.N.Y. 2009) ("While I can conceive of cases in which being sued would qualify as an adverse employment action, in this case the counterclaims have merit . . . ."), *and Torres*, 628 F. Supp. 2d at 472–73 (holding only that "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation"). Additionally at least one New York state court has upheld a state retaliation claim based on a lawsuit without discussing the right to petition. *See Steadman v. Sinclair*, 636 N.Y.S.2d 325, 326 (App. Div. 1996) (upholding a state aiding and abetting retaliation claim based on a suit allegedly "instigated by defendant's employer in retaliation").

Since neither party addressed the issue in the complaint, motion to dismiss, or subsequent briefs, this Court will not address it. Courts in the Southern District of New York have sometimes decided to address unbriefed issues on motions to dismiss and sometimes decided not to address them. *Compare Chevron Corp. v. Donziger*, No. 11 Civ. 691, 2012 WL 1711521, at *15 (S.D.N.Y. May 14, 2012) (holding that when defendants failed to argue an open question on

12

a motion to dismiss and plaintiffs' complaint would be sufficient if they were to win on the open question, "there is no basis" for dismissing the claim), *and Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 722 n.3 (S.D.N.Y. 2012) (holding it "inappropriate" to dismiss a claim on the basis of an argument defendants did not make given that another of plaintiff's claims required the action to proceed regardless), *with D'Antonio v. Metro. Transp. Auth.*, No. 06 Civ. 4283, 2008 WL 582354, at *7 & n.18 (S.D.N.Y. Mar. 4, 2008) (dismissing claim against one defendant based on an argument that that defendant did not raise when codefendants raised that argument and plaintiffs "had the opportunity to brief this issue with respect to [codefendants'] motions"), *and Perkins v. Kamco Supply Corp.*, No. 06 Civ. 5054, 2007 WL 4207193, at *3 & n.3 (S.D.N.Y. Nov. 27, 2007) (dismissing *pro se* plaintiff's claim on grounds "not raised by Defendant" that would cause the claim to "plainly fail," but allowing for a motion for reconsideration).

Looking at those cases, it seems to us that ruling on a motion to dismiss by relying on unbriefed arguments is analogous to a sua sponte dismissal for failure to state a claim. "[T]he district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties." 5B Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1357 (3d ed. Westlaw 2012). In the Second Circuit, we have held that "it is bad practice for a district court to dismiss without affording a plaintiff the opportunity to be heard in opposition." *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999).

Although Scott has had opportunity to be heard in opposition to dismissal, WPIX did not prompt her to discuss the right to petition. We think the decision in *Chevron Corp.*, 2012 WL 1711521, in which the court refused to dismiss when nonmovants did not raise an open issue and

13

complainant would state a plausible claim if the open issue were settled in complainant's favor, is correct. Therefore, we believe it makes sense to allow the parties to develop this legal argument before we rule. *Cf.* 5B Miller & Kane, *supra*, § 1357 ("The district court should be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability is novel or even 'extreme,' since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions.").

Given that we are not ruling on the right to petition issue and we found the contribution suit is a materially adverse action, we must now turn to the issue of causation.

C. Scott Has Pled Sufficient Facts on Causal Connection To Survive a Motion To Dismiss

Finally, WPIX claims that "Scott has failed to allege any facts that would establish a causal connection between the filing of her lawsuit and Berlamino's claim against her for contribution." Mem. Law Supp. WPIX, Inc.'s Mot. Dismiss 4. WPIX argues that there can be no inference of causation created by "temporal proximity between protected activity and adverse employment action," *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009), because nearly a year lapsed between Scott's discrimination filing and Berlamino's contribution claim. Scott brought her ADEA action in court on June 14, 2010, while Berlamino did not bring a contribution action against Scott until May 9, 2011, in the *Hoff* action and May 20, 2011, in this suit.

However, "[t]he plaintiff is required to make only a minimal showing to meet the fourth prong of the *prima facie* case. 'The plaintiff's burden at the beginning of the case is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement.'" *Valenzuela v. River Bay Corp.*, No. 06 Civ. 903, 2007 WL 2435161, at *8 (S.D.N.Y. Aug. 24, 2007) (quoting *Raniola v. Bratton*, 243 F.3d 610, 624 (2d

Cir. 2001)). Additionally, while close proximity is indeed necessary to show causation when standing alone, *Morisseau*, 532 F. Supp. 2d at 616 ("In order to infer a causal connection between protected activity and an adverse employment activity on the basis of timing alone, the temporal proximity must be 'very close.'" (quoting *Clark City Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), other facts may also be used to infer causation.

In this case, three alleged facts create an inference of causation. First, on Scott's information and belief, WPIX has never sued an employee for contribution in a discrimination suit previously, Scott's Second Am. Fourth-Party Compl. ¶ 10. This suggests a unique and targeted motivation. Second, Scott claims that WPIX is obligated to indemnify her, *id.* ¶ 12–13, 19–21, and that WPIX "assumed the cost of Berlamino's defense," *id.* ¶ 7. If WPIX would have to pay Scott's damages, then WPIX would not receive any monetary benefit. If so, then WPIX's motivation could be little other than a desire to harm Scott's reputation, which also suggests a motive to harm Scott. Finally, although the contribution suits were not filed close in time to Scott's own suit, they were filed very close in time to Hoff's suit—two months and a day—and less close in time—roughly seven months—to Berlamino's suit. WPIX argues that the delay was to allow Berlamino "sufficient time to investigate and assess the viability of bringing a contribution claim against Scott . . . ." Mem. Law Supp. WPIX, Inc.'s Mot. Dismiss 6. Although WPIX claims that this delay was "without regard to Scott's own claims against WPIX," *id.*, the timing suggests that WPIX could have been waiting until all age discrimination suits were brought, then considered the viability of a retaliatory countersuit, and then retaliated. Retaliation that requires legal research is still retaliatory. Given the preparation time necessary for this form of alleged retaliation, there was temporal proximity from the time in which the final discrimination suit was filed and the filing of the contribution suits against Scott, which, when

combined with the first two alleged facts and the fact that the contribution claims came after Scott filed her discrimination suit, shows enough of a causal connection to succeed in creating a plausible prima facie case. Because of these alleged facts. causation can be plausibly shown from Scott's complaint.

## IV. Conclusion

For the reasons provided in the foregoing opinion, WPIX's motion to dismiss the Fourth-Party Complaint is **DENIED**.

SO ORDERED.

Dated: September 19 2012
New York, NY

_____
U.S.D.J.